HONORABLE RONALD B. LEIGHTON

1

2

3

4

5

6

7
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

8

PHILADELPHIA INDEMNITY
9    INSURANCE COMPANY,

                            Plaintiff,
10

11        v.

12   OLYMPIA EARLY LEARNING
     CENTER, et al.,

13
                            Defendants.
14

CASE NO. C12-5759 RBL

ORDER ON MOTIONS TO COMPEL
AND FOR PROTECTIVE ORDER

[Dkt. #s 40 and 42]

15        THIS MATTER is before the Court on Defendant's Motion to Compel [Dkt. #40] and

16   Plaintiff's Motion for a Protective Order [Dkt. #42].

17        In this action, Philadelphia Indemnity Insurance Company (PIIC) seeks a determination

18   of the amounts it owes to the Defendants[1] under its policies, and specifically, that a $1 million

19   limit applies.  Defendant Olympia Early Learning Center (OELC) argues that the limit is $1

20   _____

21        [1] In the underlying suits, the families of six children molested or allegedly molested by an
     OELC employee (Tabor) sued OELC.  The plaintiff families settled with OELC.  OELC
22   confessed to judgment, the families agreed not to execute, and OELC assigned its rights against
     PIIC to Plaintiffs.  The settlement was subject to a reasonableness hearing, at which PIIC sought
23   to intervene and object to the settlement.  The attorney for at least some of the underlying
     Plaintiffs now represents Defendant OELC in this case.

24

1    million annually and that the events at issue took place over four policy years—thus, a $4 million

2    limit applies.  The primary issue is policy stacking: whether PIIC must pay $1 million (as it reads

3    the policy) or $4 million (as OELC reads the policy, stacking four annual $1 million policies).

4    PIIC seeks a declaration that the $1 million policy limit applies to all of the molestation claims.

5    It also seeks to interplead that amount and to obtain a discharge of its obligations to claimants

6    (apparently including one person who was not a plaintiff in the underlying actions).  OELC has

7    asserted counterclaims for bad faith and violations of Washington's Insurance Fair Conduct Act,

8    Wash. Rev. Code § 48.30.010.

9         Central to PIIC's claims is the policies' Sexual Abuse Coverage Form and its limitations.

10   The Motions before the Court relate to discovery aimed at the Form and PIIC's handling of

11   claims under it. PIIC's Motion for a Protective Order arises from OELC's discovery efforts into

12   two areas: It seeks to conduct a Rule 30(b)(6) deposition of PIIC on the topic of other claims

13   against PIIC involving interpretation of the Sexual Abuse Coverage Form,[2] and it seeks

14   documents related to such actions.  PIIC argues that the policy interpretation issue is one of law

15   and that courts (including this one) have consistently denied discovery into other insureds'

16   claims files.

17        Further, OELC seeks to compel the production of additional documents from PIIC's

18   claims file that PIIC claims are protected by attorney-client privilege or the work product

19   doctrine.  OELC argues that the attorney-client privilege is waived and that the work product

20

21   _____

     [2] The notice specifically seeks testimony regarding:

22        "[T]he number, nature, and identity of any and all legal actions or lawsuits where
          Philadelphia Indemnity Insurance Company was or is currently the insurer and

23        where the nature of the legal action or lawsuit involved the interpretation of
          coverage under the Sexual Abuse Form in situations having multiple sexual

24        abuses occurring in multiple policy periods by one perpetrator."

doctrine does not apply or that it can be overcome.  It asks the Court to conduct an *in camera* review of the documents claimed to be protected, citing a series of cases culminating in the Washington Supreme Court's recent opinion in *Cedell v. Farmers Ins. Co.*, 295 P.3d 239 (Wash. 2013).

For the reasons that follow, the Motion for a Protective Order is GRANTED. The Motion to Compel is GRANTED to the extent that the Court orders *in camera* review of the disputed files under *Cedell*.

### A.      PIIC's Motion for a Protective Order

OELC seeks information contained in other insureds' claims files related to PIIC's handling of other claims under the Sexual Abuse Coverage Form.  It relies on the valid (but general) proclamations that the scope of discovery is broad and that one seeking a protective order bears a heavy burden.  It argues that where policy language is ambiguous, extrinsic evidence is relevant and therefore clearly discoverable.  Finally, it argues that PIIC's claims handling in other similar cases is relevant to its bad faith counterclaim.  OELC seeks information from two cases identified by PIIC (both in other jurisdictions) which at least tangentially relate to the policy interpretation question at issue in this case.

PIIC argues that this evidence is not relevant and is not reasonably calculated to lead to the discovery of admissible evidence.  It relies on this Court's opinion in *Schorno v. State Farm Fire & Cas. Co.*, No. 09-cv-5778-RBL, 2010 WL 2545382 (W.D. Wash. June 21, 2010), *aff'd*, 445 Fed. Appx. 956 (9th Cir. 2011), and a long string cite of other cases holding that discovery into other insureds' claims files is inappropriate.

1   PIIC further argues that its conduct in cases[3] involving the Sexual Abuse Coverage

2   Form—especially in other jurisdictions—is not at all relevant to the questions presented by this

3   case.  It argues that its claims handling in other cases is not extrinsic evidence relevant to

4   interpretation of the policy language at issue here and is not relevant in the context of OELC's

5   bad faith counterclaim, which addresses only PIIC's conduct in this case.

6   In *Schorno*, this Court addressed a similar issue: whether one insured was entitled to

7   another's claims file in the context of a bad faith claim.  It held that the discovery was not

8   permitted, relying on a long line of precedents holding that such discovery was not warranted.

9   OLEC has not cited an analogous case reaching the opposite result.  The resolution of the

10   underlying coverage/limits dispute would not be advanced by the claims files in the two other

11   cases at issue, even if they did involve the same issue presented here.

12   PIIC's motion for a Protective Order is GRANTED.  Its 30(b)(6) deponent need not

13   address the claims handling of other cases involving the Sexual Abuse Coverage Form and need

14   not produce documents related to those cases.

15   **B.        OELC's Motion to Compel**

16   The claims files in *this* case are a different matter.  OELC seeks the production of four

17   categories of documents from PIIC's claims file:

18   **Category 1**: Communications between the underlying defense counsel and PIIC;

19   **Category 2**: PIIC's internal communications, including those between PIIC's claims
    professionals;

20
21   **Category 3**: Communications between PIIC and Seattle coverage counsel,
    maintained within the defense claims file; and,

22   _____

23   [3] PIIC claims that while it initially identified two similar cases, neither is analogous to
    this case.  One case did not involve the same coverage form at all, and the other did not involve
24   the stacking issue presented here.

**Category 4**: Communications between PIIC and national coverage counsel, maintained within the defense claims file.

PIIC claims that the requested documents are protected by the attorney-client privilege, the work product doctrine, or both.  PIIC also claims that it has already produced the documents in Category 1.[4]

OELC's right to discover the remaining documents—PIIC's internal claims communications and PIIC's communications with its coverage counsel, including its opinion work product—is governed by *Cedell*, with respect to both the asserted attorney-client privilege and protection under the work product doctrine.

### 1.      An Insured's Access to Claims Files After *Cedell*

The Washington Supreme Court's recent *Cedell* opinion is its latest effort to address ongoing confusion over the scope of the attorney-client privilege and work product doctrine in the context of bad faith claims.  In it, the court distinguished between first party claims (like this one), and UIM claims (in which the insurer effectively stands in the tortfeasor's shoes and does not have a quasi-fiduciary relationship to its insured).  *Cedell*, 295 P.3d at 245.

The Washington Supreme Court's opinion prescribes a sort of "decision tree" to determine what files must ultimately be produced in a first party bad faith case:

> We start from the presumption that there is no attorney-client privilege relevant between the insured and the insurer in the claims adjusting process, and that *the attorney-client and work product privileges are generally not relevant*. However, the insurer may overcome the presumption of discoverability by showing its attorney was not engaged in the quasi-fiduciary tasks of investigating and evaluating or processing the claim, but instead in providing the insurer with counsel as to its own potential liability; for example, whether or not coverage exists under the law.

---

[4] Based on this claim, the Motion to Compel Category 1 documents is DENIED without prejudice.  PIIC correctly concedes that these documents are discoverable.

1    Upon such a showing, the insurance company is entitled to an *in camera* review
2    of the claims file, and to the redaction of communications from counsel that
     reflected the mental impressions of the attorney to the insurance company, unless
3    those mental impressions are directly at issue in its quasi-fiduciary responsibilities
     to its insured.  If the trial judge finds the attorney-client privilege applies, then the
     court should next address any claims the insured may have to pierce the attorney-
4    client privilege.

5  *Cedell*, 295 P.3d 239, 246 (internal citations and footnotes omitted; emphasis added).

6  Unfortunately, the opinion creates rather than alleviates confusion about what must be produced,

7  and under what circumstances.

8       First, the opinion often conflates the attorney-client privilege and the work product

9  doctrine.  Indeed, in footnote 6, the opinion states that "an asserted attorney-client privilege may

10  also be subject to Wash. R. Civ. P. 26(b)(4)."  However, that Rule relates to materials "prepared

11  in anticipation of litigation"—work product—and specifically addresses an adverse party's

12  ability to discover ordinary work product upon a showing of substantial need.  *See Cedell*, 295

13  P.3d at 246, n. 6.  Washington's Rule, like Fed. R. Civ. P. 26(b)(4), does not permit discovery of

14  opinion work product, even upon a showing of substantial need.

15       To this Court's knowledge, there is not and has never been in Washington a "substantial

16  need" exception to the attorney-client privilege.  The Ninth Circuit explained the matter

17  succinctly: "[A] substantial need does not, as a matter of law, provide a legal basis for piercing

18  the attorney-client privilege.  It can, however, provide the basis for obtaining material withheld

19  under the work product doctrine."  *Siddall v. Allstate Ins. Co*., 15 Fed. Appx. 522, 523 (9th Cir.

20  2001), *citing Admiral Ins. Co. v U.S. Dist. Court for Dist. of Arizona*, 881 F.2d 1486, 1494 (9th

21  Cir. 1989).  If the Washington Supreme Court intended to create such a vast exception to the

22  attorney-client privilege in footnote 6, it did so without explanation and without acknowledging

23  that it was fundamentally altering the law in this area.

24

1    Compounding the problem in diversity cases is the fact that while the attorney-client

2    privilege is a matter of substantive state law, the work product doctrine is a matter of federal

3    procedural law.  *See* Fed. R. Civ. P. 26(b)(3); *Lexington Ins. Co. v. Swanson*, 240 F.R.D. 662,

4    666 (W.D. Wash. 2007).  *Cedell* holds that, under certain circumstances, the insurer waives its

5    right to redact parts of its claims file under Washington substantive law.  Fed. R. Civ. P. 26(b)(3)

6    should not be read to "trump" that determination on the basis that it is procedural.  However,

7    with respect to the alternate basis for obtaining work product from a claim file in a diversity

8    case—substantial need—such claims should be resolved under Fed. R. Civ. P. 26(b)(3), not

9    *Cedell*.

10    Elsewhere, the opinion recognizes that the insurer's attorney's mental impressions,

11    opinions and the like—her opinion work product—need not be disclosed unless that work

12    product is "directly at issue in the insurer's quasi-fiduciary responsibilities to its insured**."**

13    *Cedell*, 295 P.3d at 246.  In other words, the attorney's coverage opinions apparently remain

14    protected, unless and until the insured succeeds in piercing the attorney-client privilege.  This

15    latter determination is the final step in the *Cedell* analysis.

16    Yet, even if the trial court's initial *in camera* review shows that the attorney-client

17    privilege applies, the insured may still attempt to pierce the privilege by a showing of bad faith.

18    *Cedell*, 295 P.3d at 246.  If it does so, *Cedell* appears to suggest that the trial court conducts

19    another *in camera* review, this time to determine whether the documents show that "a reasonable

20    person would have a reasonable belief that an act of bad faith tantamount to civil fraud[5]

21    occurred," then the attorney-client privilege is waived.  If, on the other hand, the trial court does

22    _____

23    [5] The opinion's summary restates this requirement as "a finding there is a foundation to
permit a claim of bad faith to proceed."  *Cedell*, 295 P.3d at 247.

24

1  *not* find a foundation for a claim of bad faith, then the insurer need not produce the

2  communications with its own attorney in connection with the underlying claim. This would

3  appear to put the trial court in the uncomfortable position of sorting through evidence to

4  determine if an insured has a potential civil fraud claim—essentially an investigative role for the

5  court, rather than an adjudicative one.

6        In summary, *Cedell* describes four scenarios in which an insured may discover the

7  insurer's claims file, including communications with, and work product created by, the insurer's

8  own attorney:

9  • If the insurer cannot overcome the initial presumption that the attorney-client privilege
      and work product protections are waived in the first-party bad-faith context.[6]

10

11 • If, and to the extent that, the *in camera* review reveals that the insurer's attorney engaged
      in the quasi-fiduciary roles of investigating, processing, or evaluating a claim.

12 • If the *in camera* review reveals that the attorney's opinion work product is "directly at
      issue in [the insurer's] quasi-fiduciary responsibilities to its insured."

13

14 • If the *in camera* review leads the trial court to find that there is a "foundation for a bad
      faith claim [tantamount to civil fraud] to proceed."[7]

15 Thus, *Cedell* gives an insured four separate opportunities to obtain the insurer's entire claims

16 file.  If nothing else, it is now clear that the scope of discovery in first party bad faith actions is

17

18 _____

19     [6] *Cedell* is silent as to what evidence might suffice to overcome such a presumption and
   trigger *in camera* review.

20

21     [7] The opinion's discussion of piercing the attorney-client privilege does not specifically
   address the impact of a bad-faith "foundation" on the discoverability of ordinary or opinion work

22 product.  However, the Washington Supreme Court was clear about its initial willingness to
   "presume" that the attorney-client privilege *and* the work product doctrine "are generally not
   relevant" in first party bad faith cases.  *Cedell*, 295 P.3d at 246.  Assuming that "relevant" means

23 "applicable" in this context, the Court can only conclude that the Washington Supreme Court
   intended that both sorts of protections are waived where the trial court's *in camera* review shows

24 bad faith tantamount to civil fraud.

very broad, and the attorney-client privilege and work product doctrine are less difficult to overcome now than they were prior to the opinion.

### 2. The Court Will Conduct a Single, Multi-Purpose *In Camera* Review of the Unredacted Claims File

Under *Cedell*, the next step in resolving OELC's Motion is to conduct an *in camera* review of the claims file, including all redacted documents identified in Tables 1 and 2 to the Appendix to PIIC's Response [Dkt. #46]. *Cedell* seems to envision the trial court conducting an *in camera* reviews of the insurer's claims file at two separate steps in the process—first, after the insurer makes a showing that the material does not relate to its quasi-fiduciary responsibilities, and second, if the insured seeks to pierce the privilege by showing bad faith. Additionally, the court is required to ascertain whether the claims file contains opinion work product directly related to the insurer's quasi fiduciary duties to its insured. And, as will be discussed below, it also must determine whether the insured has a substantial need for some work product contained in the claims file, under Fed. R. Civ. P. 26(b)(3). Making these determinations in multiple reviews of the claims file is cumbersome and unnecessary.

The Court will instead conduct one *in camera* review of the documents at issue. It will first evaluate whether PIIC's attorneys engaged in the quasi-fiduciary tasks of investigating and evaluating or processing the underlying claims. To the extent that the attorneys engaged in quasi-fiduciary tasks, the attorney-client privilege and work product doctrine are waived, and the documents are discoverable.[8]

---

[8] The Court notes that this is merely the common-sense and long-standing practice. If the insurer's attorney engages in duel roles—both as coverage counsel and investigator—the trial court must separate protected communications and work product created in the coverage counsel role from the documents created in the investigative role. *See Cedell*, 295 P.3d at 246 n. 5 (noting that "[w]here an attorney is acting in more than one role, insurers may wish to set up and

1    If they did not, PIIC is entitled to redact from its production the mental impressions of the

2    attorney communicated to the insurance company, *unless* those mental impressions are directly

3    at issue in the attorneys' quasi-fiduciary responsibilities to OELC.  *Cedell*, 295 P.3d at 247.  The

4    Court's review, then, will include this latter inquiry.

5    Even if the opinion work product is not directly at issue in the attorneys' quasi-fiduciary

6    responsibilities to OELC, the process is not complete.  The remaining inquiry is whether the

7    documents (and OELC's showing in support of its Motion) support a finding that there is a

8    factual foundation to permit a reasonable person to believe that an act of "bad faith tantamount to

9    civil fraud" has occurred.

10   If there is such a foundation, the attorney-client privilege (and the protections of the work

11   product doctrine) is waived and the documents will be produced in their unredacted form.  If

12   there is not such a factual foundation, the attorney-client privilege and work product doctrine

13   apply, notwithstanding the initial presumption that they do not.

14   The Court will make these inquiries sequentially, but for practical purposes will do so

15   during a single *in camera* review of the disputed documents.  The documents should be produced

16   in unredacted form within ten days of this Order.  The documents produced for review should

17   show PIIC's proposed redactions of its attorneys' opinion work product.

18   The Motion to Compel based on *Cedell* is GRANTED to the extent that the Court will

19   review the entire[9] unredacted claims file in camera for the purposes outlined in that opinion.

20

21   ───────────────────────────────────────────

22   maintain separate files so as not to co-mingle different functions," thereby easing the trial court's
     new doc-review responsibilities).

23

24   [9] PIIC should include for the Court's review the documents in Category 1 which have
     already been produced in their unredacted form.  Those communications may inform the Court's

### 3. **Work Product Doctrine and Substantial Need**

OELC also claims that the work product doctrine does not apply for a separate reason: it claims that it has demonstrated a substantial need for the documents.  It argues that its bad faith claims have put at issue PIIC's knowledge about OELC's potential for excess exposure at all times, and that the best (and possibly only) source of evidence as to this knowledge are the letters, emails, claims diary entries, and attorney bills of the claims adjusters and defense counsel over the course of OELC's defense in the underlying actions.  It argues that absent this information, it cannot discover the "whole truth" about what PIIC actually knew during the course of the underlying litigation.

OELC—relying on some of the same authority endorsed and clarified in *Cedell*, including those sanctioning an *in camera* review for substantial need—argues that in the bad faith context, an insured has a substantial need for the opinion work product contained in the claims files.

It is not entirely clear that, after *Cedell*, it is necessary to resolve a claim of substantial need separate from the *in camera* review the Court will already be conducting for multiple purposes under *Cedell*.  It is perhaps theoretically possible that a claims file could contain work product evidence for which an insured does has a substantial need to advance his bad faith claims, but which is simultaneously insufficient to meet the *Cedell* test of a "foundation to permit a claim of bad faith to proceed."  *Cedell*, 295 P.3d at 247.

The Court will await the *in camera* review to determine if anything in the claims file falls into this presumably narrow and rare category.  Otherwise, the production of the claims file will

---

inquiry into whether the documents as a whole support a finding of that there is a foundation for a claim of bad faith to proceed.

1   be determined by the *in camera* review.  The Motion to Compel on the basis of substantial need

2   is DENIED without prejudice.

3          IT IS SO ORDERED.

4          Dated this 2nd day of July, 2013.

5

6

RONALD B. LEIGHTON
UNITED STATES DISTRICT JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24