1

HONORABLE RONALD B. LEIGHTON

2

3

4

5

6

UNITED STATES DISTRICT COURT
7
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

8

PHILADELPHIA INDEMNITY
9  INSURANCE COMPANY,

CASE NO. C12-5759 RBL

ORDER DENYING OELC'S
10          Plaintiff,
MOTION FOR SUMMARY
JUDGMENT ON INTERPLEADER

11       v.
[Dkt. #61]

12  OLYMPIA EARLY LEARNING
CENTER, et al.,

13

Defendants.

14

15      THIS MATTER is before the Court on the OELC defendants' Motion for Summary

16  Judgment on PIIC's Interpleader action.  OELC asks the Court to dismiss PIIC's interpleader

17  claim, or to stay it pending the resolution of their state court bad faith claim against PIIC.

18      The facts and procedural background of the case have been addressed in prior orders on

19  other issues.  PIIC's Complaint seeks (1) a determination that its policy limit is $1 million, (2) to

20  interplead that $1 million into the Court, and (3) to obtain a discharge of "all liability in

21  connection with this litigation and the Policies."  [Dkt. #1 at ¶¶5.1-5.2]

22      OELC's position was and is that the limits as written are $4 million.  It has also

23  consistently claimed that PIIC defended the underlying lawsuits in bad faith, in a variety of

24

ways[1].  OELC asserts PIIC's bad faith as an affirmative defense[2] in this case, and has argued in this and other filings that that bad faith does or will have the effect of mooting the policy limit dispute.  It has also indicated that it will affirmatively seek damages in a bad faith lawsuit in state court.

In its current Motion, OELC argues (1) that the alleged bad faith and unclean hands estop PIIC from asserting a "coverage defense" (the policy limits), and (2) PIIC is not entitled to the relief it seeks because the property it has pledged—the $1 million—is not sufficient to cover the amounts it could potentially owe.  In the alternative, OELC seeks a stay of this action pending the outcome of its state court bad faith lawsuit.

Because it cannot be said as a matter of law that PIIC engaged in bad faith on the record before the court, OELC's motion is DENIED.  And because the merits of the bad faith allegations cannot be reasonably adjudicated here and in a parallel state court proceeding, the Court will STAY this proceeding pending the outcome of a full trial on the merits and effects of those allegations in state court.

**A.  Standard of Review.**

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  In determining whether an issue of fact exists, the Court must view all evidence in the light most favorable to

---

[1] Among other allegations, OELC claims that PIIC breached its duty to defend the underlying lawsuits, and failed to inform OELC of a "major coverage dispute"—the policy limits dispute referenced above, and detailed in prior motion practice resulting in the Court's Order at Dkt. #94.

[2] OELC has not asserted a bad faith counterclaim in this action; it has instead asserted bad faith as an affirmative defense to PIIC's effort to establish the limit of coverage and to obtain a discharge of all liabilities by depositing amount so determined into the Court.

1    the nonmoving party and draw all reasonable inferences in that party's favor.  *Anderson Liberty*

2    *Lobby, Inc*., 477 U.S. 242, 248-50 (1986); *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996).

3    A genuine issue of material fact exists where there is sufficient evidence for a reasonable

4    factfinder to find for the nonmoving party.  *Anderson*, 477 U.S. at 248.  The inquiry is "whether

5    the evidence presents a sufficient disagreement to require submission to a jury or whether it is so

6    one-sided that one party must prevail as a matter of law."  *Id*. At 251-52.  The moving party

7    bears the initial burden of showing that there is no evidence which supports an element essential

8    to the nonmovant's claim.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Once the movant

9    has met this burden, the nonmoving party then must show that there is a genuine issue for trial.

10   *Anderson*, 477 U.S. at 250.  If the nonmoving party fails to establish the existence of a genuine

11   issue of material fact, "the moving party is entitled to judgment as a matter of law."  *Celotex*, 477

12   U.S. at 323-24.

13   **B.   OELC is not entitled to summary judgment on its claim that PIIC's bad faith or**
     **unclean hands estops it as a matter of law from interpleading its policy limit.**

14
15           OELC's primary argument is that PIIC engaged in bad faith in defending the underlying

16   lawsuits.  Its Motion is essentially a Motion for Summary Judgment on the merits of its bad faith

17   affirmative defense.   It points out that interpleader is an equitable proceeding, and argues that

18   PIIC breached its duty to defend OELC in the underlying lawsuits by failing to mount a

19   reasonable defense, to pursue settlement, and to inform its insured of a major coverage dispute.

20   It claims that PIIC's conduct created a controversy over the stake it seeks to interplead, and that

21   its failure to reserve rights estops it from denying coverage.  It argues that as a matter of law

22   PIIC breached its duties under *Tank v. State Farm Fire & Cas. Co.,*715 P.2d 1133, 105 Wn.2d

23   381 (1986).  These allegedly breached duties include: (1) failing to investigate the merits of the

24   underlying claims; (2) failing to provide a competent defense, by (among other things) failing to

1    reserve enough money to fund the defense; (3) failing to keep its insureds informed of issues

2    surrounding their coverage; and (4) demonstrated greater concern for its own interests than those

3    of its insured.

4        PIIC argues that the bad faith claims are not ripe, as they have not been affirmatively

5    asserted in this case.  It argues that it did not create any controversy over the interpleaded stake,

6    but instead defended without a reservation of rights, attempted to mediate the limits stacking

7    issue, and offered its policy limits in settlement. When those efforts failed, they initiated this

8    Interpleader and declaratory judgment action to determine the policy limits.  It argues that it had

9    no obligation to reserve rights on the limits of coverage, and that *Tank's* articulation of an

10   insurer's enhanced duties does not apply where it did not defend under a reservation of rights.  It

11   also argues that even bad faith does not establish "unclean hands" for purposes of equity, and

12   that it reasonably and permissibly relied on counsel to investigate the underlying claims.

13       For purposes of this motion, at least, these arguments are persuasive.  PIIC did not defend

14   under a reservation of rights, and the bulk of *Tank's* admonitions about an insurer's enhanced

15   obligations when it does so do not apply in this case.

16       *Tank* explained that all insurers have basic obligations to their insureds that amount to a

17   duty of good faith.  Generally, these duties require fair dealing and equal consideration for the

18   insured's interests.  When an insurer undertakes to defend its insured under a reservation of

19   rights—defending the underlying lawsuit while reserving the right to deny coverage—there are

20   inherent potential conflicts of interest that give rise to the insurer's (and the retained defense

21   counsel's) "enhanced obligations" to the insured.  *Tank*, 715 Wn.2d at 1137.

22        These enhanced obligations included the duty to thoroughly investigate the claim, to

23   retain competent defense counsel, and to ensure that the insured (and not the insurer) is the

24

1    attorneys' client.  The insurer must inform the insured of the reservation of rights defense and

2    keep it apprised of all developments regarding coverage and the lawsuit, including all settlement

3    offers made by the insurer.  And the insurer must refrain from engaging in any action that would

4    demonstrate a greater concern for its own monetary interest than for the insured's financial risk.

5    *Tank*, 715 Wn.2d at 1137.

6          OELC has not established that, as a matter of law, PIIC's assertion of its policy limits or

7    its defense of the underlying claims amount to bad faith (or unclean hands) depriving it of the

8    benefit of its policy limits.  The Motion for Summary Judgment on this basis is DENIED.

9    **C.  PIIC did not create the controversy over the stake.**

10         OELC also seeks dismissal of PIIC's interpleader on the basis that PIIC itself created the

11   controversy over the stake—the $1 million policy limit that PIIC seeks to pay in exchange for an

12   Order absolving it of any further liability to any claimants.  Thus, it claims, PIIC is not entitled to

13   the equitable remedy of Interpleader.

14         This argument is at least in part a variation of its bad faith claim.  OELC also claims that

15   by defending without a reservation of rights, and then, months later, disputing coverage, it

16   deprived its insured of several rights:  the right to select their own investigators and counsel, the

17   right to control the defense, and the right to prepare a coverage defense on its own.  Thus, it

18   claims, the controversy—the applicable limits—was created by PIIC.

19         PIIC correctly responds that the controversy over the stake was created by the acts of the

20   insured's employee, and by the fact that those acts potentially exposed the insured to liability

21   beyond its insurance policy.  And as is discussed below, OELC's argument necessarily depends

22   on characterizing the limits dispute as a dispute over coverage under the policies.  That is not an

23   accurate characterization.  PIIC defended without reserving its rights, because it did not deny

24   coverage.  When a dispute arose over the applicable limits, PIIC sought to mediate that issue and

1  apparently offered the policy limits to settle. These acts do not deprive PIIC of its right to

2  interplead the policy limits, and OELC's Motion for Summary Dismissal on that basis is

3  DENIED.

4  **D.  OELC's assertion of its policy limits is not a coverage dispute.**

5      OELC consistently claims that this is a coverage dispute, and points out that PIIC failed

6  to defend under a reservation of rights.  It claims that by so failing, PIIC is stopped as a matter of

7  law from denying coverage.  But PIIC has not denied coverage:  it apparently conceded that the

8  underlying molestation claims were covered under the Riders, but simultaneously asserted the $1

9  million limits applicable under those Riders.  Despite OELC's claims to the contrary, this is not a

10 coverage dispute, or a quasi or de facto coverage dispute, as a matter of law.  There is no

11 Washington law supporting the contention that an insurer has an obligation to reserve rights on

12 the issue of coverage limits.  There is persuasive authority from another Judge in this District

13 holding that does not. *See Lexington Ins. Co. v. Swanson*, 2007 WL 1585099 (W.D. Wash

14 2007).

15 **E.  The Court will stay the Intepleader action pending the resolution of OELC's affirmative bad faith claims.**

16     OELC asks the court in the alternative to stay the Interpleader action pending the

17 outcome of its affirmative bad faith claim in state court.  PIIC's Interpleader asks the Court to

18 take its $1 million and to discharge it from all liability related to the underlying claims.  The

19 latter relief is not available until and unless the bad faith allegations fail—either as a matter of

20 law or after a trial on their merits.

21     OELC has asserted bad faith as a defense to the Interpleader, and in this Motion seeks a

22 ruling as a matter of law that PIIC engaged in bad faith, and that that has the effect of negating

23 the policy limits.  It cannot be said as a matter of law that PIIC engaged in bad faith on the record

24

1   before the Court, but it also cannot be said that the bad faith allegations fail as a matter of law.

2   There will be no "discharge" of all of PIIC's potential liability until the bad faith claim is

3   resolved.

4        It does not make practical sense for the parties or the Court to litigate the bad faith claim

5   in the context of an affirmative defense to the Interpleader, and for the outcome of that defense to

6   presumably have preclusive effect in some other state law case where bad faith is an affirmative

7   claim.  Although PIIC opposes a stay, its response implicitly recognizes this, by arguing that the

8   bad faith claim is not yet ripe as a means for removing the policy limit.

9        Accordingly, the Court will STAY this case pending the outcome of the state court,

10  affirmative bad faith litigation.  The Court will also SUSPEND its review of the disputed

11  attorney-client privilege documents, as the *Cedell* determinations resulting from that review are

12  more appropriately resolved in the context of a litigation where bad faith *is* affirmatively asserted

13  as a means for overcoming the policy limits.  The trial date and all other pretrial deadlines are

14  therefore STRICKEN, and the Clerk is instructed to statistically terminate this case.  No bond

15  will be required.

16       The parties shall promptly inform the Court of the result of the state court litigation.

17       IT IS SO ORDERED.

18       Dated this 21st day of November, 2013.

19

20       _____
         RONALD B. LEIGHTON
21       UNITED STATES DISTRICT JUDGE

22

23

24