UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| PHILADELPHIA INDEMNITY INSURANCE COMPANY,<br><br>　　　　　　Plaintiff,<br>　　v.<br><br>OLYMPIA EARLY LEARNING CENTER et al,<br><br>　　　　　　Defendants. | CASE NO. 3:12-cv-05759-DGE<br><br>ORDER GRANTING PLAINTIFF'S MOTION TO LIFT STAY (DKT. NO. 106) |

## I　　INTRODUCTION

This matter comes before the Court on Plaintiff Philadelphia Indemnity Insurance Company's Motion for Relief from Stay (Dkt. No. 106). For the reasons articulated herein, we GRANT Plaintiff's motion to lift the stay and sua sponte GRANT Defendants leave to amend their answer to assert their compulsory counterclaims.

## II　　BACKGROUND

On November 21, 2013, this Court issued an order staying these proceedings "pending the outcome of the state court, affirmative bad faith litigation." (Dkt. No. 97 at 7.) On

ORDER GRANTING PLAINTIFF'S MOTION TO LIFT STAY (DKT. NO. 106) - 1

December 5, 2013, Plaintiff moved for reconsideration of the stay. (Dkt. No. 99.) The Court reaffirmed its issuance of the stay and denied Plaintiff's motion for reconsideration on August 22, 2014. (Dkt. No. 106.) On September 1, 2022, Plaintiff filed a motion to lift this Court's stay (Dkt. No. 106), which Defendants opposed (Dkt. No. 117). Plaintiff also filed a motion for summary judgment on September 1, 2022 (Dkt. No. 108), which they thereafter withdrew (Dkt. No. 121). Reasonableness hearings in a related state court action in the Superior Court of Washington for Thurston County concerning the appropriateness of covenant judgments between the families of victims of Elisha Tabor's sexual abuse (the "Families" or "Underlying Plaintiffs") and Olympia Early Learning Center ("OELC") and its officers (together the "Underlying Defendants") concluded after almost ten years and the superior court issued its findings of facts and conclusions of law on October 26, 2022. (*See* Dkt. No. 122-1 at 2.) The court determined that the covenant judgments between the Families and the Underlying Defendants were reasonable. (*Id.* at 5.) As part of the settlement between the Families and OELC, the Families were assigned rights against Plaintiff. (*Id*. at 5, 14.)

### III      DISCUSSION

**A.      Defendants' Bad Faith Claims are Compulsory Counterclaims**

Plaintiff moves this Court to lift its stay now that a reasonableness hearing in state court has been conducted and the Superior Court of Washington for Thurston County has issued its findings of fact and conclusions of law approving the proposed covenant judgments between the Families and the Underlying Defendants. (Dkt. Nos. 106 at 5; 122-1 at 5.)

The operative stay in this case provides that "[t]he Court will STAY (and statistically terminate) this litigation until a bad faith claim is asserted here, or the results of a state court action are reported here." (Dkt. No. 105 at 3.) The Court issued this stay in response to

Plaintiff's motion for reconsideration that sought to stay this action until the conclusion of a pending state court reasonableness hearing. (Dkt. No. 99 at 5.) The Court, in issuing the stay, was concerned by the prospect of issuing an advisory opinion since the Defendants have not yet filed any bad faith claims against Plaintiff in any court and did not assert their bad faith claims as counterclaims but instead listed them as affirmative defenses. On review, the Court has determined that a ruling on the merits of Plaintiff's claim seeking absolution from liability is within this Court's jurisdiction. Any alleged breach of duties to the insured parties under the policy at issue would be compulsory counterclaims.

Defendants' bad faith claims against Plaintiff are thus compulsory counterclaims that arise out of the same transaction or occurrence at the heart of Plaintiff's interpleader claim and, as a result, must be asserted in this forum or risk waiver. Federal Rule of Civil Procedure 13 provides that a party must assert a counterclaim "that—at the time of its service—the pleader has against an opposing party if [it] . . . (A) arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and (B) does not require adding another party over whom the court cannot acquire jurisdiction." Fed. R. Civ. P. 13(a). "The Rule bars a party who failed to assert a compulsory counterclaim in one action from instituting a second action in which that counterclaim is the basis of the complaint." *Seattle Totems Hockey Club, Inc. v. Nat'l Hockey League*, 652 F.2d 852, 854 (9th Cir. 1981). The Ninth Circuit applies the liberal logical relationship test to determine whether a counterclaim is compulsory. *Mattel, Incv. MGA Ent., Inc.*, 705 F.3d 1108, 1110 (9th Cir. 2013). A counterclaim has a logical relationship to the underlying action where it "'arises from the same aggregate set of operative facts as the initial claim, in that the same operative facts serve as the basis of both claims or the aggregate core of facts upon which the claim rests activates additional legal rights otherwise dormant in the

defendant.'"  *Id.*  (quoting *In re Pegasus Gold Corp.*, 394 F.3d 1189, 1196 (9th Cir. 2005)). Washington applies the same test as the Ninth Circuit to determine whether a counterclaim is compulsory.  *Schoeman v. New York Life Ins. Co.*, 726 P.2d 1, 7 (Wash. 1986) ("The considerations behind compulsory counterclaims include judicial economy, fairness and convenience. Of the four tests, the logical relationship test is the most widely recognized and it best fosters these important considerations. We find the logical relationship test applicable.")

Here, Defendants' alleged bad faith claims stem from Plaintiff's handling of settlement negotiations and thus arise from the same set of operative facts as Plaintiff's underlying claim. Plaintiff filed suit seeking a declaratory judgment regarding the applicable maximum insurance policy limit for claims against the Underlying Defendants.  (Dkt. No. 1 at 18.)  Defendants have alleged in this litigation that Plaintiff failed to adequately investigate the claims levied against the Underlying Defendants, failed to investigate whether former OELC employee Tabor committed child sex abuse, failed to put forward an adequate defense of the Underlying Defendants, failed to pursue settlement negotiations, and failed to timely inform the Underlying Defendants of a potential coverage dispute.  (*See generally* Dkt. No. 61.)

Defendants previously argued that their bad faith claims were not compulsory counterclaims.  (*See* Dkt Nos. 101 at 6–8; 117 at 10.)  To support this claim, they relied primarily on *Fid. Nat. Title Co. v. U.S. Small Bus. Admin.*, No. 2:13-CV-02030-KJM-AC, 2014 WL 1883939 (E.D. Cal. May 12, 2014), where a national title company filed an interpleader action to determine proper ownership of surplus proceeds from a non-judicial foreclosure.  The defendants in the action filed several counterclaims against the stakeholder, Fidelity National Title Company, and other parties, including breach of contract and violations of California's elder protection laws.  *Id.* at *4.  The court in *Fid. Nat. Title Co.* determined that the defendants'

claims were not compulsory because their counterclaims focused on allegedly wrongful acts leading to the foreclosure rather than facts related to the order of priority of competing interests in the interpleader action. *Id.* at *6.

Defendants assert that the current case parallels *Fid. Nat. Title Co.* as Plaintiff's interpleader claims focus on the amount of indemnification owed by Plaintiff and who Plaintiff is obligated to pay. (Dkt No. 101 at 7.) These facts, Defendants assert, do not logically relate to "whether Philadelphia Indemnity is liable in tort for bad faith based on its breaches of its duty to defend its insureds leading up to the covenant judgments and this interpleader action." (*Id.*) The Court disagrees.

*Fid. Nat. Title Co.* is distinguishable as the case did not involve a dispute over an insurer's obligations under an insurance policy and the defendants in the case did not raise any claims of bad faith as against the interpleading party. The various claims that defendants raised related to underlying "wrongful acts of the parties involved in an allegedly wrongful foreclosure action." 2014 WL 1883939 at *6. Here, by contrast, Defendants' allegations of bad faith are related to Plaintiff's obligations to the Underlying Defendants under the insurance policy between the parties—the same policy which Plaintiff seeks to clarify through this interpleader action. Specifically, Plaintiff seeks a determination of "the maximum insurance policy limit to which all claimants could be entitled", to "[d]ischarge [Plaintiff] from all liability in connection with this litigation and the policies," and to "[d]eclare that . . [Plaintiff] will have no further duty to defend or indemnify [OELC]" from the claims of the Underlying Plaintiffs. (Dkt. No. 1 at 18–19.) The Underlying Plaintiffs, however, now sit in the shoes of OELC pursuant to the covenant judgments between the Underlying Plaintiffs and OELC. (*See* Dkt. No. 122-1.)

Allegations that an insurer did not act in good faith are inextricably linked to an insurer's fiduciary obligations to an insured pursuant to their policy agreement. *See Tank v. State Farm Fire & Cas. Co.*, 715 P.2d 1133, 1136 (Wash. 1986) (noting that the source of obligation for an insurer to act in good faith "is the fiduciary relationship existing between the insurer and insured. Such a relationship exists not only as a result of the contract between insurer and insured, but because of the high stakes involved for both parties to an insurance contract and the elevated level of trust [between the parties]."). Courts have also regularly recognized allegations of an insurer's bad faith as compulsory counterclaims. *See, e.g.*, *Neuropathy Sols., Inc. v. Massachusetts Bay Ins. Co.*, No. SACV2201263DOCJDE, 2022 WL 6589002, at *5 (C.D. Cal. Sept. 7, 2022) (finding that insured party's bad faith claim against insurer was a compulsory counterclaim); *Hans v. Homesite Indem. Co.*, No. CV08-0393-PHX-JAT, 2009 WL 2169170, at *1 (D. Ariz. July 17, 2009) (finding that a claim that insurer's refusal to provide coverage and to pay for a defense for an insured party involved in an altercation was a compulsory counterclaim). As such, we find that OELC's bad faith claims, now assigned to the Underlying Plaintiffs, against Plaintiff are compulsory counterclaims and must be raised in this forum.

**B.    Defendants Should be Granted Leave to Amend Their Answer**

The Court also finds sua sponte that Defendants should be granted leave to amend their answer to affirmatively assert their bad faith counterclaims as opposed to affirmative defenses. The Ninth Circuit has held that leave to amend pursuant to Federal Rule of Civil Procedure 15(a)(2) should be granted with "'extreme liberality.'" *Herring Networks, Inc. v. Maddow*, 8 F.4th 1148, 1160 (9th Cir. 2021) (quoting *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001). "In determining whether leave to amend is appropriate, the district court considers 'the presence of any of four factors: bad faith, undue delay, prejudice to the

opposing party, and/or futility.'" *Owens*, 244 F.3d at 712 (quoting *Griggs v. Pace Am. Group, Inc.*, 170 F.3d 877, 880 (9th Cir.1999)).

None of these factors weigh against granting the Defendants leave to amend. First, there is no evidence of bad faith on the part of Defendants. Second, any delay in asserting bad faith claims against Plaintiff is not attributable to Defendants but to significant delays in state court in approving the covenant judgments between the Families and Underlying Defendants. Third, granting leave to amend does not prejudice Plaintiff since they have consistently sought to bring Plaintiff's bad faith claims into this forum for resolution. (*See, e.g.*, Dkt. No. 103 at 4) ("Defendants' putative bad faith claims derive from the same basic operative facts already at issue in this lawsuit and should be litigated in this suit."). Finally, the Court has already determined that these claims have merit. (*See* Dkt. No. 61 at 7.) As such, the Court GRANTS Defendants with leave to amend their answer to affirmatively assert their bad faith counterclaims.

The Court does not at this time address whether the inclusion of a non-diverse party would defeat this Court's jurisdiction over Plaintiff's interpleader claim. (*See* Dkt. No. 106 at 10.) Additionally, the Court reserves judgment on the issue of whether Plaintiff has judicially estopped itself from seeking this Court's determination of the Families' bad faith damages claims. (*See* Dkt. No. 117 at 11.)

Finally, we deny Defendants' motion for sanctions since, at this time, Plaintiff has withdrawn their motion for summary judgment. We caution Plaintiff's counsel against filing future motions in contravention of this Court's orders.

## IV  CONCLUSION

Accordingly, and having considered Plaintiff's motion (Dkt. No. 106), the briefing of the parties, and the remainder of the record, the Court finds and ORDERS that Plaintiff's motion to lift this Court's stay is GRANTED. We further GRANT Defendants with leave to amend their answer to assert their bad faith claims as counterclaims rather than affirmative defenses.

1. Defendants shall AMEND their answer within three weeks of the issuance of this order.
2. The Parties shall meet pursuant to Federal Rule of Civil Procedure 26(f) and shall issue a joint status report no later than 30 days after Defendants files their amended answer.

Dated this 23rd day of November, 2022.

David G. Estudillo
United States District Judge