UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| PHILADELPHIA INDEMNITY INSURANCE COMPANY,<br><br>                Plaintiff,<br>   v.<br><br>OLYMPIA EARLY LEARNING CENTER et al,<br><br>                Defendant. | CASE NO. 3:12-cv-05759-DGE<br><br>ORDER ON MOTION FOR ORDER TO APPROVE MINOR SETTLEMENT (DKT. NO. 243) |

## I   INTRODUCTION

This matter comes before the Court on Counterclaim Plaintiffs' unopposed Motion to Approve Minor Settlements which involves the beneficial interest of Minor Plaintiffs J.T., A.K., S.R.B., and M.M (Minor Plaintiffs) who were sexually abused by Elisha Tabor, an employee of Olympia Early Learning Center (OELC). (Dkt. No. 243.) While there are numerous litigants involved in this case, the Court solely evaluates the settlement terms in relation to the interests of the Minor Plaintiffs.

ORDER ON MOTION FOR ORDER TO APPROVE MINOR SETTLEMENT (DKT. NO. 243) - 1

For the reasons discussed below, the Court GRANTS Counterclaim Plaintiffs' motion to approve minor settlements.

## II   FACTUAL AND PROCEDURAL BACKGROUND

**A. Underlying Proceedings**

The underlying litigation ensued after Tabor sexually abused Minor Plaintiffs while he was employed at OELC—the daycare they attended. (*See* Dkt. No. 122-1 at 6–9.) Minor Plaintiffs were two to four years old at the time of the abuse. (*Id.* at 3–5.) J.T. disclosed that Tabor "played with her 'bagina' during naptime." (*Id.* at 7.) J.T. described that Tabor would lay down next to her on the mat, pull down her diaper, and press something hard against her "bagina" hurting her. (Dkt No. 242 at 10.) An examination at Mary Bridge Children's Hospital found abuse could not be ruled out. (*Id.*) J.T. continues to attend counseling after her experience at OELC. (*Id.*)

A.K. attended OELC from a young age. (*Id.* at 15.) She exhibited behavior indicative of sexual abuse and regressed developmentally. (*Id.*) Minor Plaintiffs' expert opined that "the variety of harms caused to a young child as a result of sexual abuse not only . . . would be exhibited as a child but could be exhibited into adolescence and beyond." (*Id.*) Consistent with Minor Plaintiffs' expert opinion, the abuse negatively impacted A.K.'s sexual development and created issues with boundaries and trust. (*Id.* at 16.)

Tabor also sexually abused S.R.B., who attended OELC between January 2007 and May 2009. (Dkt. No. 242 at 19.) After Tabor changed S.R.B.'s diaper in violation of OELC policy, she told her mother "eli, owie mom!" and reported pain in her vaginal area. (Dkt. No. 122-1 at 7.) Ms. Barbieri took S.R.B. to St. Peter's Hospital and the Monarch Sexual Assault Center, they

found sexual assault could not be ruled out. (Dkt. No. 242 at 20.) Minor Plaintiffs' expert opined S.R.B. "would likely sustain effects of the childhood sexual abuse[.]" (*Id.*)

M.M. attended OELC between August 2007 and April 2011. (*Id*. at 24.) "When M.M. was 4 years old, Ms. Mendoza contacted the Sexual Assault Center because she observed him touching his older sister in her private area." (*Id.* at 25.) Next, she contacted "law enforcement to inquire if Tabor had identified any additional victims of his behavior to include M.M." (*Id.*) Minor Plaintiffs' expert "opined that M.M.'s developmental delay and toilet training regression after being in Tabor's classroom were known to be highly indicative of a very young child who was 'significantly traumatized by sexual abuse.'" (*Id.*) Further, he "related it to M.M.'s exposure to abuse by Tabor at OELC." (*Id.*) M.M. required counseling after the abuse, however, it was difficult for his mother to obtain counseling, due to his developmental delays caused by the abuse. (*See id.*)

"All minor Plaintiffs other than Plaintiff M.M.[,who was nonverbal,] disclosed sexual abuse by Tabor or sexual activity in general, such as statements regarding 'drinking pee' or requests to kiss their genitals." (Dkt. No. 122-1 at 8.) Further, Minor Plaintiffs "exhibited behaviors consistent with sexual abuse, including prematurely sexualized behavior, new or significantly worsened behavioral issues, toileting issues, and/or reluctance to attend OELC." (*Id.* at 8–9.)

In 2011, a number of claimants, including the Minor Plaintiffs, began filing lawsuits against OELC alleging negligence in retaining Tabor, failure to protect their children from being sexually abused, and failure to supervise. (*Id.* at 9.) Subsequently, Plaintiffs added Defendants Rose Horgdahl and Steve Olson to the lawsuits because they were involved in OELC's management. (*Id.* at 6, 9.) Counterclaim Defendant Philadelphia Indemnity Insurance Company

(Philadelphia) "provided indemnity to OELC and its officers and directors pursuant to various contracts for insurance." (Dkt. No. 243.) Philadelphia retained counsel on behalf of OELC, Olson, and Horgdahl to defend against the lawsuits. (Dkt. No. 122-1 at 10.)

In 2012, after evaluating the risks involved in proceeding to trial, the manner in which retained defense counsel prepared for trial, and the manner in which Philadelphia handled the defense and indemnity of the lawsuits, Counterclaim Plaintiffs (including the Minor Plaintiffs) and OELC negotiated and executed stipulated judgments. (*Id*. at 14–15.) On October 26, 2022, eleven years after litigation began and following several appeals, the Honorable James J. Dixon of the Superior Court of the State of Washington for Thurston County concluded the covenant judgments[1] were reasonable and that the stipulated judgments amounts were also reasonable. (*Id.* at 30.)

### B. Federal Court Proceedings

On August 24, 2012, Philadelphia brought an interpleader action against Counterclaim Plaintiffs to determine the maximum insurance policy all claimants were entitled to under Philadelphia's policies. (Dkt. No. 1 at 18.) Philadelphia also asked to be discharged from liability in this litigation, and for the Court to declare that upon payment of the policy limits Philadelphia had no duty to further defend OELC, Olsen, and Horgdahl. (Dkt. No. 1 at 19.)

On October 16, 2013, the Honorable Ronald B. Leighton, United States District Judge, granted Philadelphia's motion for summary judgment and concluded that the applicable policy limits were $1,000,000. (Dkt. No. 94.) Nonetheless, Judge Leighton stayed the action until a

---

[1] "[T]he covenant judgment agreed to by parties is both qualitatively and analytically distinct from a monetary settlement." (Dkt. No. 122-1 at 15–16) (citing *CBS Corp. v. Ulbricht*, 12 Wn. App. 2d 1013, 2020 WL 622940, at *4 (Wash. Ct. App. Feb. 10, 2020)). "Unlike a cash settlement, there is therefore no certainty that the covenant judgment agreement entered in this case will result in any monetary recovery to Plaintiffs." (*Id.* at 16.)

bad faith claim was asserted or the reasonableness hearing in state court concluded. (*See* Dkt. No. 105 at 2–3.)

On September 1, 2022, after the state court concluded its reasonableness hearing, Philadelphia filed a motion to lift stay. (Dkt. No. 106.) On November 23, 2022, this Court granted Philadelphia's motion to lift stay and granted Defendants leave to amend their answer to assert their bad faith claims as counterclaims. (Dkt. No. 124.) On December 14, 2022, Defendants filed a counterclaim in this lawsuit for insurance bad faith. (Dkt. No. 125.)

On July 18, 2024, retired state court Judge Paris K. Kallas informed the Court the Parties had participated in mediation and that the case was resolved. (Dkt. No. 227.) On August 6, 2024, the Court granted Philadelphia's motion to appoint settlement guardian ad litem Virginia L. DeCosta (SGAL). (Dkt. No. 234.) On October 1, 2024, the SGAL provided the Court a report for each minor child's claims and Counterclaim Plaintiffs filed their motion to approve minor settlement. (Dkt. Nos. 242, 243.) The SGAL reviewed the pleadings, covenant judgments, SGAL reports from the underlying action, declarations from Minor Plaintiffs' parents, mental health life care plans for each Minor Plaintiff, and all written fee agreements. (Dkt. No. 242 at 4–6.) The SGAL filed a supplemental report on October 14, 2024. (Dkt. No. 246.)

On November 13, 2024, the Court asked the Minor Plaintiffs' attorneys to identify the reasons why the Carr Law Firm should receive attorney fees for its work on behalf of A.K. at a rate higher than the attorney fee rate charged to the other Minor Plaintiffs. (Dkt. No. 252.) On November 18, 2024, Counterclaim Plaintiffs informed the Court "the Carr Law Firm has agreed to reduce the fee agreement with A.K. from 60 percent of the gross to 40 percent of the gross amount." (Dkt. No. 253.)

**C. Proposed Settlement**

    1. Terms of the Settlement

On October 1, 2024, the parties filed the present motion to approve settlement of the Minor Plaintiffs' claims. (Dkt. No. 243.) The terms of the settlement provide:

> There will be a total monetary payment from [Philadelphia] or on behalf of [Philadelphia] to Counterclaim Plaintiffs' counsel in the amount of $28.5 million in exchange for a release of all claims against Counterclaim Defendants.
>
> The Settlement Guardian Ad Litem has recommended a net apportionment of [$1,578,471.50] to J.T.; [$1,578,471.50] to A.K.; [$1,262,047.20] to S.R.B.; and [$1,262,047.20] to M.M.
>
> Minor Plaintiffs S.R.B., J.T., and M.M. have been represented by Darrell L. Cochran and Kevin M. Hastings of Pfau Cochran Vertetis Amala, PLLC in this matter. They entered into a contingency fee agreement of forty percent (40), plus litigation costs in the case.
>
> Plaintiff A.K. was represented by Harold D. Carr, P.S. who associated with Darrell L. Cochran and Kevin M. Hastings of Pfau Cochran Vertetis Amala, PLLC. The executed fee agreement calls for a 60% fee from the gross settlement if the case is appealed. The Carr Law Firm has agreed to reduce its fee to [40]%.

(Dkt. Nos. 243 at 4–5; 246 at 3–4; 253.)[2]

Judge Dixon approved a covenant judgment that allocated a gross amount of $2,500,000 for Minors J.T. and A.K. and $2,000,000 for Minors S.R.B. and M.M. (Dkt. No. 122-1 at 5.) The present settlement provides a gross settlement of $2,850,000 for Minors J.T. and A.K. and $2,280,000 for Minors S.R.B. and M.M. (Dkt. No. 243 at 3.) The SGAL found that the additional settlement funds for the bad faith counterclaims is reasonable and recommended the Court approve the settlement. (Dkt. No. 242 at 10.)

    2. Attorney Fees and Litigation Costs

---

[2] The SGAL's supplemental report informed the Court certain expert costs had been omitted from the SGAL's prior report. (Dkt. No. 246 at 2.)

The SGAL recommends the Court approve the requested attorney fees and litigation costs for Minor Plaintiffs. (Dkt. No. 242.)

On behalf of the minors, the parents of J.T.M., S.R.B., and M.M. entered into a contingency fee agreement with Pfau Cochran Vertetis Amala (PCVA) and consented to a 40% attorney fee from the gross settlement, if the case was appealed, as occurred several times over the course of litigation. (Dkt. No. 242 at 13, 22, 27.) As such, PCVA would receive:

- $1,140,000 of J.T.M.'s gross settlement (*Id.* at 13.)
- $912,000.00 of S.R.B.'s gross settlement (*Id.* at 22.)
- $912,000.00 of M.M.'s gross settlement (*Id.* at 27.)

A.K.'s parent executed on her behalf a written contingency fee agreement with the Carr Law Firm, which called for 60% attorney fee from gross settlement if the case is appealed. (*Id.* at 17.) The Carr Law Firm agreed to reduce its fee request to 40%. (Dkt. No. 253.) Thus, the Carr Law Firm would receive:

- $1,140,000.00. of A.K.'s gross settlement (*Id.*)

The SGAL recommends the Court approve the requested attorney fees due to the "steadfast and remarkable" work performed by counsel "over a decade of hard-fought litigation including two appeals." (*Id.*) The SGAL found the attorneys' work "commendable in light of all the substantive issues involved, and the significant risks posed each step of the way." (*Id.* at 18.) Further, she believes the "contingency fee is more than reasonable pursuant to the factors set forth in the [Washington] Rules of Professional Conduct." (*Id.* at 13.)

The SGAL reviewed the itemization of litigation costs and recommends approval of reimbursement of the costs advanced to the amount of:

- J.T. $126,528.50. (Dkt. No. 246 at 3.)

ORDER ON MOTION FOR ORDER TO APPROVE MINOR SETTLEMENT (DKT. NO. 243) - 7

- A.K. $126,528.50. (*Id.* at 3.)
- S.R.B. $100,952.80. (*Id.* at 4.)
- M.M. $100,952.80. (*Id.* at 4.)

### III LEGAL STANDARD

"District courts have a special duty, derived from Federal Rule of Civil Procedure 17(c), to safeguard the interests of litigants who are minors." *Robidoux v. Rosengren*, 638 F.3d 1177, 1181 (9th Cir. 2011). "In the context of proposed settlements in suits involving minor plaintiffs, this special duty requires a district court to conduct its own inquiry to determine whether the settlement serves the best interests of the minor." *Id.* (internal quotation marks omitted). "Thus, although the court does not ignore the decision of the state court in approving the minor settlement at issue here, the fact that Plaintiffs sought approval of their [covenant judgment] in state court does not discharge this court's duty to conduct its own inquiry." *M.F. v. United States*, No. C13-1790JLR, 2015 WL 630946, at *4 (W.D. Wash. Feb. 12, 2015) (internal quotation marks omitted). "In carrying out its duty, the Court must supervise the guardian ad litem's work." *Andersen v. Leweis McCord Communities LLC*, No. 3:21-CV-5391, 2023 WL 4532455, at *2 (W.D. Wash. July 13, 2023) (internal quotation marks omitted).

The *Robidoux* court took issue with district courts applying state law and local rules governing the award of attorney fees because "this approach places undue emphasis on the amount of attorney's fees provided for in a settlement, instead of focusing on the net recovery of the minor plaintiff under the proposed agreement." 638 F.3d at 1182. To avoid inconsistency in minor settlements involving federal claims, the Ninth Circuit instructed district courts to limit the scope of their review to "whether the net amount distributed to each minor plaintiff in the settlement is fair and reasonable in light of the facts of the case, each minor's claims, and typical

recovery by minor plaintiffs in similar cases." *Id.* at 1181–82. "[S]tate law, [] unlike Robidoux, requires the court to evaluate the reasonableness of any attorney's fees provided by the settlement[.]" *M.F.*, 2015 WL 630946 at *5.

"Under Washington law, parents may not settle or release a child's claim without prior court approval." *Scott v. Pac. W. Mountain Resort*, 834 P.2d 6, 11 (Wash. 1992). In every settlement of a claim involving the beneficial interest of a minor the court shall determine the adequacy of the proposed settlement on behalf of the affected person and reject or approve it. Wash. Super. Ct. Spec. P. R. 98.16W(a) *Estates-Guardianship-Settlement of Claims of Minors and Incapacitated Persons*. "The court's determination of reasonableness of a settlement is a factual issue[.]" *Glover v. Tacoma Gen. Hosp.*, 658 P.2d 1230, 1236 (1983), abrogated on other grounds by *Crown Controls, Inc. v. Smiley*, 756 P.2d 717 (1988).

In harmony with Local Civil Rule 17(c), Washington law provides that the Court shall appoint settlement guardian ad litem to assist the Court in determining the adequacy of the proposed settlement and instructs the SGAL to investigate and file a written report with the court recommending approval and final disposition. Wash. Super. Ct. Spec. P. R. 98.16W (c) *Estates-Guardianship-Settlement of Claims of Minors and Incapacitated Persons*. The report should be appropriately in depth and provide a discussion of the expenses and fees for which payment is requested. Wash. Super. Ct. Spec. P. R. 98.16W(e)(12) *Estates-Guardianship-Settlement of Claims of Minors and Incapacitated Persons*. "SPR 98.16W authorizes attorney fees for settlements on behalf of a minor and contemplates the [Court's] exercise of discretion over these fees." *In re Settlement/Guardianship of AGM*, 223 P.3d 1276, 1283 (Wash Ct. App. 2010).

Here, the Court sits in diversity jurisdiction and is assessing the Minor Plaintiffs' settlement aiming to resolve their state law claims of bad faith. "District courts are split on

whether the *Robidoux* standard applies to the evaluation of a minor's compromise regarding state-law claims." *Est. of Serna v. Cnty. of San Diego*, No. 20-CV-2096-BAS-DDL, 2024 WL 4152362, at *2 (S.D. Cal. Sept. 10, 2024).  However, here, "it is not necessary for the Court to resolve the question of whether *Robidoux* or state rules apply.  The outcome is the same [in this case]." *Castro v. United States*, Case No. 19-cv-02240-AJB-JLB, 2022 WL 594545, at *2 (S.D. Cal. Feb. 28, 2022) (collecting cases).

## IV  DISCUSSION

First, the Court considers whether the Minor Plaintiffs' net recovery is "fair and reasonable in light of the facts of the case, each minor's claims, and typical recovery by minor plaintiffs in similar cases." *Robidoux*, 638 F.3d at 1181–82.  This is not a typical case because despite the disturbing underlying sexual abuse claims, the policy limits of the insurance policies at issue in the bad faith claims provided coverage limits of $1,000,000.  Thus, from the outset, it was questionable whether any of the claimants would recover any significant amount in the underlying litigation.  Nonetheless, notwithstanding these policy limits, and after years of litigation, the end result will yield net proceeds of approximately $1,200.000 to two of the Minor Plaintiffs and approximately $1,500,000 to the other two Minor Plaintiffs.  Considering the unique circumstances of the claims involved and the history of the litigation, the Court concludes the net recovery to each Minor Plaintiff is reasonable and atypical in a positive way.

Next, in accordance with Washington law, the Court considers whether the attorney fees and litigation costs are reasonable.  The Court gives due credit to Minor Plaintiff's counsel for their "commendable" work throughout this high-risk litigation.  As Judge Dixon stated, Minor Plaintiffs' counsel engaged in inherent risks in resolving the underlying action as a covenant judgement, rather than a cash settlement:

> Although covenant judgments and cash settlements overlap in some ways, the[y] are nevertheless separate and distinct agreements that cannot be referred to interchangeably. [Further,] [a]lthough the covenant judgment settlements in the case alleviated Defendants' risk of continued litigation, the contingent nature of the recovery under its claims assignment ensure[d] that Plaintiffs would undertake additional risks that would not have been presented by a monetary settlement. In order to obtain any recovery at all, Plaintiffs [had] to prosecute a collateral insurance bad faith action against Philadelphia Indemnity to a successful conclusion. In adjudicating the reasonableness of the stipulated judgment amounts in this case, the Court [considered] the possibility that Plaintiffs may recover nothing from Philadelphia Indemnity.

(Dkt. No. 122-1 at 25) (internal citation omitted).

In assessing the work of Minor Plaintiffs' counsel, Judge Dixon found that they "thoroughly investigated and prepared this case for trial, including depositions of key witnesses and retention and preparation of liability and expert witnesses." (Dkt. No. 122-1 at 29.) Thus, considering the "thousands of attorney hours and hundreds of thousands of dollars in cost advances . . . expended in this vigorously disputed and litigated case the plaintiffs' attorneys pursued over the course of 13 years that culminated with a $28.5 million aggregate settlement" (dkt. no. 242 at 3), the Court finds the attorney fees and litigation costs apportioned to each Minor Plaintiffs' settlement to be reasonable.

### V    CONCLUSION

Accordingly, having considered the settlement agreement, the unopposed motion and proposed order, and the record in this case, the Court APPROVES the settlement on the terms set forth in the SGAL Report and proposed order and ORDERS as follows:

1. The total gross settlement for the claims of Minor Plaintiffs shall be apportioned as follows:

**J.T.'s Proposed Global Settlement and Disbursement**

Gross Total Settlement                                                                                        $2,850,000.00

| | | |
|---|---|---|
| | Less Attorney Fee (40%) | ($1,140,000.00) |
| | Less Prorata Share of Costs Advanced | ($124,270.25) |
| | Less Costs Recently Received (prorata) | ($2,258.25) |
| | Less Amount to be Kept in Firm's Trust Account for Costs Not Posted: | ($5,000.00) |
| |     MCR Law (Trust consultation and Drafting: $3,000.00 | |
| |     Filing Fees and Costs for Trust: $2,000.00 | |
| | **Net Proceeds to J.T.:** | **$1,578,471.50** |

**A.K.'s Proposed Global Settlement and Disbursement**

| | | |
|---|---|---|
| | Gross Total Settlement | $2,850,000.00 |
| | Less Attorney Fee (4%) | ($1,140,000.00) |
| | Less Prorata Share of Costs Advanced | ($124,270.25) |
| | Less Costs Recently Received (prorata) | ($2,258.25) |
| | Less Amount to be Kept in Firm's Trust Account for Costs Not Posted: | ($5,000.00) |
| |     MCR Law (Trust consultation and Drafting: $3,000.00 | |
| |     Filing Fees and Costs for Trust: $2,000.00 | |
| | **Net Proceeds to A.K.:** | **$1,578,471.50** |

**S.R.B.'s Proposed Global Settlement and Disbursement**

| | | |
|---|---|---|
| | Gross Total Settlement | $2,280,000.00 |
| | Less Attorney Fee (40%) | ($912,000.00) |
| | Less Prorata Share of Costs Advanced | ($99,146.20) |
| | Less Costs Recently Received (prorata) | ($1,806.60) |
| | Less Amount to be Kept in Firm's Trust Account for Costs Not Posted: | ($5,000.00) |
| |     MCR Law (Trust consultation and Drafting: $3,000.00 | |
| |     Filing Fees and Costs for Trust: $2,000.00 | |
| | **Net Proceeds to S.R.B.:** | **$1,262,047.20** |

**M.M.'s Proposed Global Settlement and Disbursement**

| | |
|---|---:|
| Gross Total Settlement | $2,280,000.00 |
| Less Attorney Fee (40%) | ($912,000.00) |
| Less Prorata Share of Costs Advanced | ($99,146.20) |
| Less Costs Recently Received (prorata) | ($1,806.60) |
| Less Amount to be Kept in Firm's Trust Account for Costs Not Posted: | ($5,000.00) |
|     MCR Law (Trust consultation and Drafting: $3,000.00 | |
|     Filing Fees and Costs for Trust: $2,000.00 | |
| **Net Proceeds to M.M.:** | **$1,262,047.20** |

2. Any leftover money held back to establish the trusts shall be refunded to Minor Plaintiffs by distribution to the trusts.

3. The net funds to minors J.T., A.K., S.R.B. and M.M. shall be placed into trusts held for their sole benefit and shall be drafted by Angela Macey-Cushman in compliance with Washington law.

4. The flat fee of $3,000.00 for Angela Mace-Cushman to draft the trusts is approved.

5. The situs of administering the trusts shall be Pierce County Superior Court.

6. The fees of Settlement Guardian ad Litem Virginia DeCosta are hereby approved in the amount of $8,673.00 and Counterclaim Defendant or its insurance company shall pay such fees within 14 days of this Order.

7. Lisa Steel, on behalf of J.T.; Nicole Bond, on behalf of A.K.; Kristi Barbieri, on behalf of S.R.B.; and Alicia Mendoza, on behalf of M.M., shall be authorized to sign a full and complete settlement with the Counterclaim Defendants for settlement of any and all damages and personal injuries to the Minor Plaintiffs as

a result of the aforesaid incidents by acceptance of the above-described settlement.

8. Counsel for Counterclaim Defendants shall draft and deliver a standard settlement agreement and release pursuant to the terms of the parties' CR 2A agreement within 7 days of approval of the Minor Plaintiffs' settlement.

9. PIIC shall fund or have funded the settlements no later than 14 days after execution of the settlement agreements by a check made payable to "PCVA f/b/o [client name]."

Dated this 26th day of November, 2024.

David G. Estudillo
United States District Judge